No. 25-2798

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LEANDRE MARTELL,
*Plaintiff-Appellee*,

v.

RICHARD HOUCK,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:22-cv-00858-RFB-BNW
Hon. Richard F. Boulware, II

---

**APPELLEE'S ANSWERING BRIEF**

---

**UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC**
AMARIS MONTES*
AARON LITTMAN
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 825-9562

Counsel for Plaintiff-Appellee,
**LeAndre Martell**

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students José Garcia, Simon McMurchie, Raquel Nelson, and Dillon Sumanthiran.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION .............................................................................1

JURISDICTIONAL STATEMENT ...................................................3

ISSUES PRESENTED.......................................................................3

STATEMENT OF THE CASE...........................................................4

SUMMARY OF THE ARGUMENT .................................................12

STANDARD OF REVIEW ..............................................................15

ARGUMENT ...................................................................................16

I. The District Court Correctly Determined That Martell Established a Genuine Dispute of Material Fact for His First Amendment Retaliation Claim.................................................................16

    A. Martell's Attempt to File Prison Grievances was Protected Conduct. ...................................................................16

        1. Defendant Houck Waived Any Challenge to Martell's Protected Conduct by Failing to Raise it Below. ...........17

        2. The Ninth Circuit Has Broadly Recognized That a Prisoner's Right to File an Internal Prison Grievance is Protected Conduct, and Defendant's Cited Authorities Are Unavailing................................................................19

        3. Defendant's Argument that Grievances Need to be Legally Sound or Otherwise Meritorious to Receive First Amendment Protection Lacks Support in Law and Logic. ...........................................................................24

        4. Defendant Incorrectly Invoked *Heck v. Humphrey*, Both Procedurally and Substantively. ....................................30

B.     Martell Established a Genuine Issue of Material Fact That Defendant Houck Committed Adverse Action When He Threatened Martell and Obstructed His Access to the Grievance Process. ..................................................................33

C.     Martell Raised a Genuine Dispute About Whether Defendant Acted with Retaliatory Motive..................................................40

D.     Defendant's Threat and Deliberate Obstruction of the Grievance Process Would Deter a Person of Ordinary Firmness from Engaging in Protected Speech.........................................43

II.     Prisoners Have a Clearly Established Right to be Free From Retaliation for Filing of Grievances.....................................................48

A.     The District Court Correctly Articulated the Constitutional Right at Issue...........................................................................49

B.     The Specifics of Houck's Retaliatory Conduct Violated Clearly Established Law. ........................................................................53

1.     Houck Violated Clearly Established Law by Threatening Martell and Obstructing His Grievance.........................53

2.     Defendant's Arguments Regarding the Merits of Martell's Grievance are Irrelevant to his Claim for Qualified Immunity. ......................................................56

CONCLUSION.........................................................................................................61

CERTIFICATE OF COMPLIANCE......................................................................62

CERTIFICATE OF SERVICE ...............................................................................63

iii

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................... 48, 49

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ..................................................... 46, 47

*Blaisdell v. Frappiea*, 729 F.3d 1237 (9th Cir. 2013) ...............................................19

*Bolker v. Comm'r*, 760 F.2d 1039 (9th Cir. 1985) ...................................................17

*Booth v. Churner,* 532 U.S. 731 (2001) ...................................................................30

*Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995) .............................................. 20, 25, 26

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) ............................................... passim

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ...............................................................58

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) ................................................ 23, 41, 57

*Crittendon v. Cooper*, No. 22-55861, 2023 WL 3728380, at (D. Nev. May 1, 2023) ....................................................................................................................47

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ................................. 3, 31, 52

*Edwards v. Balisok*, 520 U.S. 641 (1997) .................................................................33

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) ..........................................................15

*Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022) .....................58

*Garcia v. Seeley,* 854 F. App'x 882 (9th Cir. 2021) .................................................40

*Garcia v. Sleeley*, 2019 WL 2234789 (S.D. Cal May 22, 2019) .............................40

*Gomez v. Vernon,* 255 F.3d 1118 (9th Cir. 2001) ......................................... 36, 45, 54

*Gonzalez v. Bendt*, 971 F.3d 742 (8th Cir. 2020) .....................................................46

*Gonzalez v. City of Phoenix*, 163 F.4th 1289 (9th Cir. 2026) .................................51

*Greisen v. Hanken*, 925 F.3d 1097 (9th Cir. 2019) .......................................... 16, 17

*Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996) ........................................................33

*Harbridge v. Reed*, 2024 WL 4719083 (9th Cir. Nov. 8, 2024)..............................47

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................................58

*Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001 (7th Cir. 2005) ...............................24

*Hawkins v. California*, 317 F. App'x 694 (9th Cir. 2009)......................................33

*Heck v. Humphrey*, 512 U.S. 477 (1994)......................................................... 30, 31

*Hernandez v. Ogbuehi*, No. 23-3306, 2025 WL 1276498 (9th Cir. May 2, 2025) .36

*Herron v. Harrison*, 203 F.3d 410 (6th Cir. 2000) ..................................................24

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3rd Cir. 2006)...................................24

*Hope v. Pelzer*, 536 U.S. 730 (2002) .......................................................................48

*Howell v. Lindquist,* No. 2:19-CV-0612-DMC-P, 2019 WL 2491182 (E.D. Cal. June 14, 2019)................................................................................... 34, 39

*In re E.R. Fegert, Inc.*, 887 F.2d 955 (9th Cir. 1989)..............................................17

*Iwanicki v. Pa. Dep't. of Corr.,* 582 F. App'x 75 (3d Cir. 2014)...................... 39, 46

*Jimenez v. Cox*, 473 F. App'x 520 (9th Cir. 2011)...................................................37

*Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) ........................................... 24, 59

*Klein v. Williams*, 714 F. App'x 631 (9th Cir. 2018) ...................................... 37, 54

*Lewis v. Casey*, 518 U.S. 343 (1996)............................................................... 24, 59

*Lyons v. Barth*, 637 F. App'x 278 (9th Cir. 2015).................................................46

*Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024).....................................................32

*Martin v. Sias*, 88 F.3d 774 (9th Cir. 1996)..................................................... 27, 28

*McCollum v. Cal. Dep't of Corr. and Rehab.,* 647 F.3d 870 (9th Cir. 2011) .........41

*McDowell v. Rivera*, No. 1:13-CV-01797-MJS, 2013 WL 6909445 (E.D. Cal. Dec. 31, 2013) ...............................................................................................39

*McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987). ................................................41

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283 (9th Cir. 1999)...........44

v

*Muhammad v. Close*, 540 U.S. 749 (2004)................................................................31

*Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020) .............................. 15, 35, 42

*Perrtu v. Richards,* 605 U.S. 460 (2025) .................................................................35

*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) ........................................... 14, 40, 48

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2004)......................................... passim

*Richey v. Aiyeku,* 790 F. App'x 115 (9th Cir. 2020) ................................. 38, 55, 56

*Richey v. Aiyeku*, No. 4:16-CV-5047-RMP, 2021 BL 99974 (E.D. Wash. Mar. 19, 2021). ......................................................................................................56

*Richey v. Aiyeku*, No. 4:18-CV-5095-RMP, 2018 WL 11466254 (E.D. Wash. July 31, 2018) ...................................................................................................38

*Richey v. Dahne*, 733 F. App'x 881 (9th Cir. 2018)....................................... passim

*Rudebusch v. Hughes*, 313 F.3d 506 (9th Cir. 2002).................................................60

*Shepard v. Quillen*, 840 F.3d 686 (9th Cir. 2016) ..................................... 15, 36, 54

*Smith v. Veterans Admin.*, 636 F.3d 1306 (10th Cir. 2011).....................................33

*Stringer v. Cnty. of Bucks*, 141 F.4th 76 (3d Cir. 2025) .........................................52

*Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074 (S.D. Cal. 2023).............42

*Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010) ..................................................15

*Tolan v. Cotton*, 572 U.S. 650 (2014)................................................................ 50, 57

*Tomel v. Hawaii*, 570 F. App'x 717 (9th. Cir. 2014) ..............................................40

*Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989) ..................................37

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) .........................................17

*Villery v. Jones*, No. 1:15-cv-01360-KES-HBK, 2025 WL 2908717 (E.D. Cal. Oct. 14, 2025) ...................................................................................................39

*Wallis v. Princess Cruises, Inc.*, 306 F.3d 827 (9th Cir. 2002) ..............................15

*Watison v. Carter,* 668 F.3d 1108 (9th Cir. 2012).......................................... passim

vi

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992)..........................17

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) .................................................................31

*Williams v. Fox*, 840 F. App'x 226 (9th Cir. 2021)........................................... 21, 22

*Williams v. Fox*, No. 1:16-CV-00143-DCN, 2019 WL 1373648 (D. Idaho Mar. 26, 2019) .........................................................................................................21

*Williams v. Fox*, No. 22-36014, 2025 WL 1419903 (9th Cir. May 16, 2025) 21, 22, 58

*Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014)........................................................42

*Woodford v. Ngo*, 548 U.S. 81 (2006) ....................................................................30

**Statutes**

28 U.S.C. § 1291 .......................................................................................................3

28 U.S.C. § 1331 .......................................................................................................3

42 U.S.C. § 1983 ......................................................................................................31

**Rules**

Fed. R. App. P. 32.....................................................................................................62

Fed. R. Civ. P. 56 .....................................................................................................35

**Regulations**

Nevada Department of Corrections ("NDOC") Administrative Regulation ("AR") 740 .....................................................................................................5, 8

**Other Authorities**

Appellee's Answering Brief, *Williams v. Fox*, 840 F. App'x 226 (9th Cir. 2021) .21

Oona Milliken, *Nevada Agrees to Pay out $1 Million to Settle Three Lawsuits from Inmates*, THE NEVADA INDEPENDENT (Jan. 17, 2026) .....................................5

STATE OF NEVADA LEGISLATIVE COMMISSION, *Board of Parole Commissioners Audit Report* (2010) ....................................................................................5

*Williams v. Fox*, No. 22-36014, 2025 WL 1419903, ER-120 ................................22

## INTRODUCTION

No iron curtain separates the First Amendment from the people held behind prison walls. For incarcerated people, whose every movement is controlled entirely by the state, the prison grievance system is not merely a procedural formality. It is often the only accessible avenue for prisoners to redress issues ranging from daily concerns to grave constitutional abuses. When prison officials obstruct that system or threaten those who use it, they do not just violate their own policies—they extinguish a constitutional lifeline that the state is obligated to preserve. Such conduct strikes at the core of the First Amendment.

Shortly after arriving at Nevada's High Desert State Prison ("HDSP"), Plaintiff-Appellee LeAndre Martell raised potential inaccuracies with his good-time credits, which are granted for good behavior and program participation. He turned to the one tool available to him: the prison grievance process. Defendant-Appellant Richard Houck, the unit's correctional caseworker, had a straightforward job: collect grievances from incarcerated people, deliver them to prison administrators for review, and return the decisions. He was a courier, nothing more.

Instead, Defendant Houck intentionally obstructed Martell's access to the grievance process and threatened Martell for the mere act of submitting grievances at all. After the prison rejected Martell's initial grievance with instructions to correct

1

it, Houck unjustifiably delayed Martell's first rejected grievance for nearly two months before returning it, in violation of prison policy. Upon receiving his rejected initial grievance, Martell immediately revised and resubmitted the grievance to Defendant Houck. In response, Houck threatened Martell: he "would not be going home if he had anything to do with it." To no surprise, Houck intentionally withheld the grievance, and it never received any review. Because Martell's access to the grievance process was repeatedly stymied by Defendant Houck, he served the entirety of his sentence without ever receiving a response on the merits of the issue he initially grieved.

Defendant Houck's conduct is precisely the type of retaliation the First Amendment forbids. The district court, reviewing Martell's First Amendment retaliation claim and relevant precedent, properly denied Houck qualified immunity at summary judgment. All remaining issues in this case rest on genuine disputes of fact that only a factfinder at trial can resolve. Ignoring that reality, Houck attempts to interject arguments waived below, misapplies the relevant legal standard, fails to engage with the district court's reasoning, and seeks to recast contested facts by presenting his own version of events as if they were undisputed.

The governing law is clear. This Court has long held that prisoners have a

2

First Amendment right to file grievances and be free from retaliation for doing so. Under that settled rule, a reasonable official would have known that obstructing access to the grievance process and threatening an incarcerated person for pursuing it was unlawful. Defendant Houck asks the Court to crown any prison employee into a grievance tyrant: empowered to arbitrarily discard complaints at will and threaten anyone who files them. The district court's denial of qualified immunity should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over Defendant Houck's interlocutory appeal pursuant to 28 U.S.C. § 1291. However, the Court's jurisdiction is limited to reviewing the pure legal question of qualified immunity, and jurisdiction does not extend to other aspects of the district court's order including the court's findings of fact. *See Cunningham v. Gates*, 229 F.3d 1271, 1286 (9th Cir. 2000).

## ISSUES PRESENTED

i. Whether the district court properly rejected qualified immunity for Defendant Houck when Martell raised a genuine dispute of material fact for each of the elements of his First Amendment retaliation claim when he alleged that: 1) he engaged in protected conduct when he filed grievances regarding his good-

3

time credits; 2) Houck committed adverse action when he threatened him and obstructed his grievances; 3) Houck committed these actions because he filed grievances; 4) this conduct chilled his ability to engage in the grievance process; and 5) Houck's actions had no legitimate penological purpose.

ii. Whether the district court properly rejected Defendant Houck's defense of qualified immunity when the Ninth Circuit has for decades clearly established that prison officials violate bedrock First Amendment protections for prisoners to file grievances without retaliation when they threaten prisoners and obstruct their ability to file grievances.

**STATEMENT OF THE CASE**

I. **Factual Background**

A. **Martell Submits a Grievance About Good-Time Credits Shortly After Arriving at High Desert State Prison.**

LeAndre Martell began his sentence at Nevada's High Desert State Prison ("HDSP") on September 2, 2021. ER-091. He was serving a sentence with a minimum term of twelve months and a maximum term of thirty months. ER-089. Nevada Revised Statutes ("NRS") 209.4465 provides that incarcerated people may earn good-time credits that can be applied to both the minimum term of a sentence (which determines when they become eligible for parole), and the maximum term (which determines the sentence's final expiration date). ER-064. The category and

4

nature of a felony conviction impact the calculation and application of good-time credits available to a prisoner, as not all sentences permit such credits to be applied to the minimum term. ER-094.

Given the complex rules governing the application of good-time credits, Martell believed that the category of his conviction was reduced such that he should be receiving good-time credits applied to his minimum term, not just the maximum term. ER-135; 138-140. Martell submitted his first informal grievance (herein "First Grievance") within four days of arriving, requesting review of the application of good-time credits to his sentence and parole date because he believed they were being incorrectly applied. ER-135.[1]

The grievance process is governed by the Nevada Department of Corrections ("NDOC") Administrative Regulation ("AR") 740. ER-104. AR 740 contains three levels for the grievance procedure: the informal grievance, a first-level appeal, and

---

[1] Nevada has a well-documented history of miscalculating good-time credits. *See e.g.,* STATE OF NEVADA LEGISLATIVE COMMISSION, *Board of Parole Commissioners Audit Report*, at 2, 9 (2010), https://www.leg.state.nv.us/Audit/Full/documents/Full-LA10-21%20Board%20of%20Parole%20Commissioners.pdf (finding that "parole eligibility dates provided by the Nevada Department of Corrections (NDOC) to the Board were incorrect" for 749 incarcerated people "because their minimum sentence was not reduced for work and merit credits."); Oona Milliken, *Nevada Agrees to Pay out $1 Million to Settle Three Lawsuits from Inmates*, THE NEVADA INDEPENDENT (Jan. 17, 2026), https://thenevadaindependent.com/article/nevada-agrees-to-pay-out-1-million-to-settle-three-lawsuits-from-inmates ("the state admitted that 'through discovery, it appears the inmate's sentences were miscalculated.'").

5

a second-level appeal. ER-112-16. Supervising prison administrators must respond to informal grievances and first-level appeals within 45 days, and must respond to second-level appeals within 60 days. ER-114-17. A prisoner may proceed to a subsequent grievance level if the response is overdue. ER-160.

### B. Defendant Houck Delays Returning Martell's Time-Sensitive Grievance for Nearly Two Months.

Shortly after Martell filed his First Grievance, Defendant Houck began obstructing his efforts. ER-005; 185-88. Defendant Houck served as a Correctional Casework Specialist ("CCS") and was responsible "for collecting grievances from the unit's grievance lockbox daily and delivering these directly to operations," as well as "returning inmates their grievances that had received a response or a rejection notice." ER-148. Houck also handled Martell's institutional paperwork, including his parole board applications. ER-185. Moreover, Defendant Houck could "facilitate inmates' access to jobs and programs that would earn them work and merit credits toward their sentence." ER-148.

Although Martell's First Grievance was rejected on October 12, 2021 for failing to state a remedy, Defendant Houck did not return the rejected grievance to Martell until December 3, 2021, nearly two months later. ER-005; 185. In total, 88 days elapsed between Martell's submission of the First Grievance and its return to

6

him. *Id.* This delay violated the prison's grievance policy, which requires responses to informal grievances within 45 days. ER-114.

Martell eventually filed a grievance appeal (herein "Second Grievance") on November 11, 2021 requesting review of his First Grievance after 56 days of silence. ER-136-40. While his grievance and appeal sat unaddressed, Martell experienced altercations with Defendant Houck. ER-185. The Second Grievance was rejected as untimely, as the First Grievance had yet to be processed. ER-137.

### C. After Martell Corrects and Resubmits His Grievance, Defendant Houck Threatens Him and Withholds His Grievance, Never Submitting it For Review.

Martell's First Grievance was rejected for failing to state a remedy. ER-133. Despite "non-grievable issue" being an available basis for rejecting an incarcerated person's grievance, HDSP staff never assigned that designation to any of Martell's grievances. *See generally* ER-133, ER-137.

After receiving the rejected First Grievance, Martell corrected the deficiency and resubmitted it directly to Defendant Houck the same day. ER-185. Although grievances are ordinarily submitted via the unit lockbox, it was not unusual for incarcerated people to submit them through staff. ER-148. According to Defendant Houck, "for all [he] knew, [Martell] had a legitimate reason for bringing the issue to [the prison's] attention." ER-149.

7

In response to the resubmission, Houck threatened Martell when walking by his cell, stating he "would not be going home if he had anything to do with it." ER-185. Following his threat, Houck kept Martell's corrected grievance and never submitted it to HDSP administrators. *Id.* Houck ultimately returned it—once again outside the required response period—falsely claiming it had been "denied" a second time. ER-186. In reality, Houck withheld the grievance and never submitted it for review. This was evident from the fact that he returned the same, unprocessed grievance without a new improper grievance memorandum (Form DOC-3098), which is required to show that the grievance was processed through the proper channels and reviewed by the Associate Warden. *Id.*[2] Accordingly, HDSP has no record of it. ER-005.[3]

In light of this conduct, Martell stopped submitting grievances through Defendant Houck, fearing Houck would deliberately withhold his grievance again or destroy his supporting documentation. ER-185. Martell had to file an emergency grievance (herein "Third Grievance") to once again attempt to resolve the important issue of his good-time credits, as well as report Defendant Houck's refusal to submit

---

[2] AR 740.08(9) states, in relevant part, that the "Grievance Coordinator will return the rejected grievance to the inmate with Form 3098 noting the reason." ER-114.
[3] AR 740.01(1) demands that "all grievances, whether accepted or not, will be entered into the Nevada Offender Tracking Information System, NOTIS." ER-105.

his corrected grievance. ER-186. He submitted this Third Grievance directly to his housing unit's sergeant who placed it in the unit grievance lockbox, and allegedly told Martell, "If it does not reach the grievance coordinator, it's because Richard [Houck] again withheld it." ER-187. Once again, HDSP has no record of this grievance. ER-005. The sergeant also allegedly told Martell that he informed Williams, the Associate Warden at HDSP, of Houck's unlawful interference with Martell's grievance. ER-187.

On February 17, 2022, Martell was transferred to Southern Desert Correctional Center ("SDCC"). ER-005. Martell was released from NDOC custody on August 24, 2022 without ever receiving a decision on the merits of his First Grievance. *Id*.

## II. Procedural History

Martell filed this action *pro se* on May 19, 2022, seeking damages alleging, *inter alia*, that Defendants Houck and Williams violated his rights under the First Amendment. ER-182-92. On December 22, the district court screened the complaint and allowed his two retaliation claims to proceed—one based on Houck's conduct in response to Martell's First and Second Grievances, and the other arising from Defendants Houck and William's actions in response to Martell's Third Grievance.

9

ER-198.[4] Related to the First Amendment claim for the First and Second Grievances, the court held that Martell stated a colorable retaliation claim because "[b]ased on the allegations, after Plaintiff engaged in protected conduct by challenging his credit calculations, Houck engaged in adverse actions to prevent Plaintiff from being able to pursue that challenge." ER-197.

On May 3, 2024, Defendants moved for summary judgment on all claims. ER-061. They asserted that Martell could not establish a First Amendment violation on any claim, and that Defendants Houck and Williams were entitled to qualified immunity because their conduct did not violate clearly established law. ER-062.

Evaluating the merits of Martell's First Amendment claims, the court found that the first claim—arising from Defendant Houck's threat and alleged refusal to submit Martell's First Grievance—presented genuine disputes of material fact as to all elements of his First Amendment claim. ER-010. Taking the facts in the light most favorable to Martell, the court held that Defendant Houck's deliberate refusal to process Plaintiff's grievance sufficiently constituted an adverse action as it "denied the opportunity for his grievance to even be reviewed or considered" and would have chilled a reasonable prisoner from filing grievances in the future. ER-

---

[4] Martell also brought an Eighth Amendment claim for cruel and unusual punishment for being held beyond the termination of his sentence. ER-198. That claim was dismissed at the screening stage. *Id.*

10

009. Though Defendants attempted to argue that Houck's actions were not "materially adverse" because Martell's underlying challenge to his sentence would have failed regardless, the district court was clear that the "merits of the Plaintiff's underlying challenge are immaterial to the retaliation inquiry" because "an adverse action 'need not be an independent constitutional violation.'" ER-009 (quoting *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012)). Moreover, the district court determined that Houck's threat to Martell, that he "would not be going anywhere if [Houck] had anything to do with it," serves as direct evidence of Houck's retaliatory motive against Martell for filing his prison grievance. ER-010. Finally, the court noted that Defendants did not dispute the remaining elements of a First Amendment retaliation claim: that Martell engaged in protected conduct and that no intervening penological goal justified the adverse action. *Id*.

Evaluating Houck's claim of qualified immunity, the district court held that the same genuine factual disputes precluded resolution of the first prong—whether a constitutional violation occurred. ER-012. On the second prong, the court relied on Ninth Circuit precedent, including *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009), to conclude that "Defendant Houck was on notice that Plaintiff was entitled to have his grievance processed by prison administration, and that he had a right to

11

be free from retaliation for doing so." ER-013. Accordingly, the district court denied qualified immunity for Defendant Houck.

The court granted summary judgment on the second claim—arising from Houck's alleged removal of Martell's third grievance from the unit's lockbox and Williams' negligent supervision—holding that the claim rested on evidence communicated to Martell by a third party (his housing unit's sergeant), so he could not show sufficient personal knowledge. ER-011.[5]

Defendant Houck timely filed his notice of appeal, challenging the district court's decision to deny qualified immunity. ER-203.

## SUMMARY OF THE ARGUMENT

The district court properly denied qualified immunity for Defendant Houck on Martell's First Amendment retaliation claim. For at least twenty years, the Ninth Circuit has clearly established that the Constitution requires prisoners to be free from retaliation when filing grievances. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). When Defendant Houck threatened Mr. Martell and obstructed his grievances, he violated clearly established law under binding precedent such as

---

[5] Though the district court granted summary judgment on this claim, the court provided the caveat that "should Plaintiff produce a declaration from Sergeant Clayton sufficient to create a genuine dispute of material fact as to his second claim, Plaintiff may move for reconsideration of [summary judgment]." ER-011.

12

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009), which demonstrates that this conduct is unlawful.

Relying on inapplicable authority, Defendant Houck argues that Martell's conduct was not protected by the First Amendment because his grievance was purportedly frivolous. This argument suggests that internal prison grievances are only protected if they are meritorious or legally cognizable in a court of law. This argument fails both procedurally and on the merits. Procedurally, Defendant Houck never raised an argument in the proceedings below that Martell's conduct was not protected and, thus, waived the issue. On the merits, his argument is misguided. A prisoner's right to file internal grievances is protected regardless of whether a grievance is legally sound or ultimately meritorious. Interpreting First Amendment protections so narrowly, as Defendant has asked, would make the protection meaningless in the prison context and would contravene this Circuit's broad protection to file grievances without retaliation. Considering this precedent, Martell's grievance—raising valid issues concerning his good-time credits—was not a frivolous internal prison grievance.

Defendant also attempts to argue that his conduct does not constitute an adverse action and had no chilling effect by rewriting the record in his Opening Brief, incorrectly claiming that "Martell does not assert that Caseworker Houck took

13

any additional punitive action or threat of punitive action." OB at 20. Perhaps unsurprisingly, Defendant Houck conveniently ignores the most damning facts in this case. Defendant Houck's words in many ways speak for themselves: after Martell attempted to file his corrected grievance, Houck threatened that Martell "would not be going home if he had anything to do with it." ER-185. Threatening Martell with prolonged incarceration—or even worse—was not the extent of Defendant Houck's actions. He also continued to stymie Martell's repeated attempts to file grievances, using his position of authority as a platform to obstruct Martell. ER-185-87. There is no doubt that this retaliatory conduct from a prison caseworker would have chilled a person of ordinary firmness. That's exactly what happened for Martell.

Finally, Houck's conduct violated Martell's clearly established rights as repeatedly articulated by the Ninth Circuit in cases such as *Pratt, Rhodes, Brodheim,* and *Watison.* Nearly two decades ago, *Brodheim* squarely resolved the central issue presented here, holding that prisoners have a clearly established right under the First Amendment to file prison grievances, and an officer violates the law when he intentionally obstructs the grievance process and threatens a prisoner for filing them. *Brodheim*, 584 F.3d at 1269. Therefore, as the district court correctly held,

14

Defendant Houck was on notice that he violated clearly established law. This Court should affirm.

## STANDARD OF REVIEW

A district court's denial of qualified immunity at summary judgment is reviewed *de novo* and limited exclusively to issues of law. *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009). On appeal of a denial of qualified immunity, "the rights-violation prong of the qualified immunity analysis mirrors the substantive summary judgment decision on the merits." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (quotations omitted). The evidence must be viewed in the light most favorable to the plaintiff. *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020). This Court liberally construes filings and motions submitted by *pro se* prisoners. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In reviewing the district court's decision on summary judgment, appellate courts must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc*., 306 F.3d 827, 832 (9th Cir. 2002).

15

**ARGUMENT**

**I. The District Court Correctly Determined That Martell Established a Genuine Dispute of Material Fact for His First Amendment Retaliation Claim.**

For a First Amendment retaliation claim to survive summary judgment, a plaintiff must show there is a genuine dispute of material fact as to whether: (1) the plaintiff engaged in protected conduct; (2) the state actor took some adverse action; (3) the adverse action was taken because of the plaintiff's protected conduct; (4) the action would chill a prisoner from exercising First Amendment rights; and (5) the conduct did not reasonably advance a legitimate correctional goal. *See Rhodes*, 408 F.3d at 567–68.[6]

**A. Martell's Attempt to File Prison Grievances was Protected Conduct.**

Defendant Houck waived any challenge to Martell's protected conduct by failing to raise it below, and this Court need not go further to affirm the district court.

---

[6] In the proceedings below as well as on appeal, Defendants do not contest the fifth element, thereby conceding that Defendant Houck's retaliatory actions did not advance a legitimate correctional goal. *See* ER-010 (district court recognizing that Defendants did not dispute the fifth element). This argument is therefore waived on appeal. *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985); *see also Greisen v. Hanken*, 925 F.3d 1097, 1115 (9th Cir. 2019) (holding that the Court would not decide to consider whether an element is contested in a First Amendment retaliation claim for the first time on appeal).

Even if the issue is reached, this Circuit's precedent broadly protects the right of prisoners to file grievances, and the authorities Defendant cites are inapposite here.

### 1. Defendant Houck Waived Any Challenge to Martell's Protected Conduct by Failing to Raise it Below.

An appellate court should not hear an issue raised for the first time on appeal. *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). While no "bright line rule" exists to determine whether a matter has been properly raised below, "[a] workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). "This principle accords to the district court the opportunity to reconsider its rulings and correct its errors." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). These principles of waiver apply with equal force in the qualified immunity context, *see Villanueva v. California*, 986 F.3d 1158, 1164 n.4 (9th Cir. 2021), and specifically to First Amendment retaliation cases where the defendant does not challenge an element necessary for a retaliation claim. *See Greisen v. Hanken*, 925 F.3d 1097, 1115 (9th Cir. 2019) (holding that the Court would not consider whether an element is contested in a First Amendment retaliation claim for the first time on appeal).

Defendant argues that Martell's conduct was not protected for the first time in his Opening Brief. OB at 15. As the Ninth Circuit has repeatedly held, that is too

17

late. Defendant Houck forfeited this argument when he failed to challenge it at any point in the proceedings for summary judgment. *See* ER-061-173; ER-016-40. The district court explicitly noted this waiver in its order denying summary judgment, observing that "[b]ecause Defendants do not dispute the remaining two elements of Plaintiff's claim – that he engaged in protected conduct and that any adverse action did not have an intervening penological goal – and there remain genuine disputes of material fact as to the other elements, the Court finds that Plaintiff's first retaliation claim survives summary judgment." ER-010.

Given the untimely nature of Defendant Houck's argument, the district court never had an opportunity to rule on the issue or address the underlying factual disputes related to whether Martell's conduct was protected.[7] Therefore, this Court should affirm the district court's holding that Martell's conduct was protected and end the inquiry here.

---

[7] Even without considering the grievance's merits, it is obvious that the specific content and even basic existence of Martell's corrected grievance form part of the essential factual dispute in this case. *See* ER-148-49 (wherein Houck contests whether Martell submitted a corrected grievance); *see also* ER-005 (wherein the district court includes the circumstances of Martell's corrected grievance in its "Disputed Facts" section). Given these factual disputes, it is inappropriate for this Court to reach this question in the first instance.

**2. The Ninth Circuit Has Broadly Recognized That a Prisoner's Right to File an Internal Prison Grievance is Protected Conduct, and Defendant's Cited Authorities Are Unavailing.**

The First Amendment guarantees prisoners the right to file grievances. *Rhodes*, 408 F.3d at 567. This is especially true by virtue of prisoners' broad right to petition the government for redress of their grievances under the First Amendment. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013). These rights are "bedrock constitutional guarantees" because, without them, "inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes,* 408 F.3d at 567.

Martell filed multiple grievances regarding the calculation of his good-time credits, as it was critically important to determine the time he could spend incarcerated. ER-130-31. Rather than facilitating the review process by transporting the grievances between Martell and prison administrators—as required by the facility's own policies—Defendant Houck withheld and removed his grievances, while also threatening Martell for filing them. ER-004-05. Houck himself acknowledges that for all he knew, Martell had a valid concern. ER-149. Therefore, he committed these retaliatory acts against Martell, knowing that he could have been raising a legitimate issue within the prison's internal grievance process.

19

This Court has long used broad, unconditional language to describe the protections of prisoner grievances. *See, e.g., Brodheim*, 584 F.3d at 1269 ("It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances."). Even when those protections have been tested by prison official's legitimate penological reasons for removing a prison grievance—which are absent here—this Court has held that these restrictions can violate the Constitution. *See id.* at 1273; *see also Richey v. Dahne*, 733 F. App'x 881, 883 (9th Cir. 2018) (describing this Court's broad understanding of *Brodheim*'s holding). This is because "[t]he reality and substance of any of a prisoner's protected rights are only as strong as his ability to . . . petition the government for redress of the deprivation of his rights." *Bradley v. Hall*, 64 F.3d 1276, 1280 (9th Cir. 1995).

In response to this Circuit's broad protection of prison grievances, Defendant Houck argues that Martell's grievance was not protected because it was frivolous, citing numerous cases which are either inapplicable, or in fact support Martell's claim. Defendant cites *Williams v. Fox* as an affirmative authority that Martell's grievance was not protected because the "First Amendment protects only nonfrivolous grievances." *See* OB at 15. *Williams v. Fox* is the only instance where this Circuit has identified a grievance as frivolous. *See Williams v. Fox*, No. 22-

20

36014, 2025 WL 1419903, at \*1–2 (9th Cir. May 16, 2025). Yet, this case only supports Martell's claim.

First, Defendant's reliance on *Williams* reveals that he has glossed over the case's procedural history. When *Williams* was before this Court on an interlocutory appeal reviewing a grant of qualified immunity at summary judgment—a posture procedurally identical to this case—this Court reversed the district court's order, holding there was a genuine dispute as to whether the plaintiff's First Amendment rights were violated when the defendant rejected the plaintiff's grievances and warned him of disciplinary action. *Williams v. Fox*, 840 F. App'x 226, 227 (9th Cir. 2021). This Court reversed the grant of qualified immunity even though there was no evidence that the grievance raised any material issues other than containing disrespectful language regarding prison staff. *See Williams v. Fox*, No. 1:16-CV-00143-DCN, 2019 WL 1373648 at \*4–5 (D. Idaho Mar. 26, 2019), *rev'd and remanded,* 840 F. App'x 226 (9th Cir. 2021). Even more, the defendants presented evidence that the plaintiff had been "developing a plan to create a First Amendment lawsuit during his time at the [jail]." Appellee's Answering Brief at 2, *Williams v. Fox*, 840 F. App'x 226 (9th Cir. 2021). Even without proof of the validity of the plaintiff's underlying prison grievances, this Court held that there was a genuine

21

dispute of fact sufficient to allow the plaintiff to present it to a jury. *Williams*, 840 F. App'x at 227.

It was only after the case was remanded for a four-day trial that a jury—not this Court—determined the grievances were frivolous, following a detailed factual inquiry that included witness testimony and examination of the plaintiff's other grievances. *Williams*, 2025 WL 1419903, at *1–2. There, the district court instructed the jury to determine whether the grievance was frivolous, defining "frivolous" as a failure to present a "genuine question or dispute that deserves jail officials' attention." *Williams v. Fox*, No. 22-36014, 2025 WL 1419903, ER-120. The defendant testified that the prisoner never raised any issue other than "derogatory names." *Williams*, 2025 WL 1419903, at *1. The plaintiff did not provide testimony rebutting the defendant about the contents of the grievance. *Id*. Considering this evidence, the jury determined that the grievance was frivolous. *Id.* at *2. Accordingly, because the grievance "raised no issue at all," this Court did not disturb the reasoned determination by the jury, especially considering the deferential standard of review of a jury's findings of fact. *Id.*

Martell easily surpasses the standard of frivolousness that was considered by the jury in *Williams* because he raised a "genuine question or dispute that deserves jail officials' attention." *Williams*, 2025 WL 1419903, ER-120. Unlike in *Williams*,

22

Martell raised a genuine issue regarding his good-time credits, raising potential discrepancies in how credits were applied to his sentence—a complex scheme for anyone to navigate, let alone a prisoner—which could be appropriately reviewed by prison administrators. ER-135.[8] He was exercising the only available avenue for him to challenge an issue of significant consequence affecting the duration of his incarceration, and he was retaliated against by Defendant Houck for doing so. ER-185. Unlike in *Williams*, there is no evidence that his grievance was merely a disrespectful derision of prison staff without more. Since this case raises even more genuine disputes of material fact than in *Williams* when it was in an identical procedural posture on summary judgment before this Court, the same result should follow here. *See also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003) (holding that the First Amendment requires "avenues for prisoners to redress the wrongs or inadequacies of their state jailors.").

Ultimately, none of Defendant Houck's cited authority supports the notion that Martell's grievance was not protected by the First Amendment. *See Lewis v.*

---

[8] NDOC's Offender Management Division ("OMD") is responsible for recording sentences and calculating parole eligibility. ER-093. Grievances related to issues within OMD's control, including classification and timekeeping, are referred to OMD for a response. ER-96; 116. Therefore, if Martell was able to proceed through the grievance system, OMD could have addressed his concerns about good-time credits.

*Casey*, 518 U.S. 343 (1996) (addressing a prisoner's right to access the court, not a First Amendment retaliation claim); *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) (never reaching the issue of what constitutes a frivolous grievance, and in fact finding that the prisoner's claim was protected by the First Amendment); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3rd Cir. 2006) (raising a non-prisoner First Amendment claim); *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001 (7th Cir. 2005) (same); *Herron v. Harrison*, 203 F.3d 410 (6th Cir. 2000) (affirming the denial of a First Amendment retaliation claim when the underlying grievance re-raised the issues from the plaintiff's previous lawsuit which had been dismissed by a federal district court). Accordingly, Defendant's authorities do not disturb the controlling precedent from this Court recognizing that Martell's grievance was protected First Amendment activity.

**3. Defendant's Argument that Grievances Need to be Legally Sound or Otherwise Meritorious to Receive First Amendment Protection Lacks Support in Law and Logic.**

Defendant asks this Court to conduct a statutory analysis of Nevada law as applied to the elements of Martell's underlying convictions to determine whether Martell's grievance was protected. OB at 16-17. In doing so, he asks this Court to evaluate whether Martell's good-time credit calculation challenge was ultimately correct or had legal merit. *Id.* Defendant Houck seems to suggest that prisoner

24

grievances are protected only if they are legally cognizable in a court of law or are eventually proven meritorious; otherwise, prisoners are free to be retaliated against. However, as the district court held, if Defendant Houck intentionally withheld Martell's grievance from processing, "the merits of Plaintiff's underlying [grievance] are immaterial to the retaliation inquiry." ER-009. Similarly, at the screening stage, the district court had no difficulty holding Martell "engaged in protected conduct challenging his credit calculations" without requiring an analysis about whether Martell's challenge was meritorious. ER-197. Any decision otherwise runs counter to the Ninth Circuit's longstanding precedent protecting prisoners' right to grieve.

This Court has broadly protected grievances that do not necessarily raise triable legal issues or do not ultimately prove to be correct. This Court's decades-long history of protecting grievances is evident in *Bradley*, for example. There, the prisoner filed a grievance for an officer's failure to retrieve him for his law library time as the officer promised, and the prisoner included offensive language about the officer in the grievance, calling her a child. *Bradley,* 64 F.3d at 1278. This Court did not hold that this grievance was unprotected because the issues in the grievance obviously could not give rise to a triable issue in court, nor did it conduct an analysis about whether the officer had in fact broken his promise to determine whether the

25

conduct was protected. *See id.* at 1279–82. Instead, this Court held that this conduct was still protected, despite the offensive language and minor issues included in the grievance, because "[i]f there is any time a prisoner should be permitted to speak freely, it is at the bar of justice." *Id.* at 1281.

This Court reinforced that expansive protection in *Brodheim*. There, a prisoner filed a grievance after he disagreed with a prison official that he was out of bounds and was asked to walk a different route back to work. *Brodheim,* 584 F.3d at 1265. The prisoner filed a grievance regarding this disagreement and his complaints about the officer's belligerent behavior, including disrespectful language toward the officers involved. *Id.* This Court was clear that, following *Bradley*, this kind of speech was protected. *Id.* at 1271. Once again, this Court did not assess whether the underlying issue in the grievance was correct (whether he was actually out of bounds), nor did it determine whether the claim was legally cognizable to hold that the conduct was protected. *See id.* at 1269–74.

Finally, in *Richey,* the court held that "content-based limitation of a prisoner's expression is unconstitutional." *Richey*, 733 F. App'x at 883–84. There, the prisoner filed an internal grievance about the actions of a prison guard, calling her obese. *Id.* at 882. The guard handling the grievance took issue with the grievance and asked him to rewrite it. *Id.* When the prisoner did not correct the grievance, the officer

removed the grievance and considered it "administratively withdrawn." *Id.* This Court strongly held that "allowing curtailment of the prison's grievance process in this way would mean that only a grievance that conformed to [defendant's] personal conception of acceptable content could get meaningful review. That is the sort of content-based discrimination that runs contrary to First Amendment protections." *Id.* at 884.

This Court's long jurisprudence—illustrated in cases such as *Bradley*, *Brodheim*, and *Richey*—demonstrates that this Circuit has repeatedly protected grievances that fall far short of raising legally cognizable issues or objectively meritorious claims. Indeed, Martell raised genuine issues regarding his good-time credits that could and should have been addressed by prison administrators. ER-135. Martell's grievance implicated far more consequential issues than those in *Bradley*, *Brodheim*, or *Richey*, which primarily concerned officers' disrespectful conduct, unfulfilled promises, or personal issues. Accordingly, Martell's grievance should fall well within the broad definition of protected conduct that this Court has outlined in its precedent.

Defendant Houck cites one single case, *Martin v. Sias*, 88 F.3d 774 (9th Cir. 1996), for his proposition that grievances require a sufficient legal basis to be protected. OB 17. Once again, his reliance on this case is deeply misleading and

27

demonstrates his misunderstanding of the law. The quoted language that grievances are frivolous if "it lacks an arguable basis in either law or in fact," refers to the common pleading standard for complaints filed in federal court—*Martin* never mentions grievances at all. *Martin*, 88 F.3d at 775. Those pleading standards in federal court plainly do not apply to administrative grievances, and this case holds no weight here.

Indeed, Defendant's argument defies both common sense and practical reality. The internal prison grievance process is designed to address matters of routine prison administration—disputes over credit calculations, commissary errors, mail handling, scheduling, and countless other issues that may be readily resolved through administrative channels, but would never independently give rise to a federal cause of action. *See e.g.* ER-106; 110 (AR 740 describing the broad issues that may be raised through the grievance process and the broad remedies available, including non-legal remedies). Obviously, *grievances* are valid even if the *legal claim* implicated may not.

The district court correctly recognized the inappropriateness of this argument when it held that "Plaintiff's underlying challenge are immaterial to the retaliation inquiry" because "[u]nlike, for example, an access to courts claim, Plaintiff need not demonstrate that a nonfrivolous legal claim was frustrated." ER-009. Consider a

simple example: prisoner's grievance about a delay of medical care for flu symptoms is a plainly appropriate grievance, even if it may not ultimately meet the standard for a plausible claim of deliberate indifference in court. Defendant's position would require prisoners to pre-litigate the legal sufficiency of their grievances before filing them, effectively collapsing the right to grieve with the right to litigate in federal court. Under that framework, the grievance process ceases to function, as it would demand that both prisoners and prison staff possess sophisticated constitutional and statutory legal knowledge simply to determine what grievances are protected. Such a system strains credulity.

Similarly, First Amendment protections for prisoner grievances also cannot turn on whether the underlying complaint, after further investigation, is ultimately correct. Consider a prisoner who challenges a disciplinary infraction he received through the grievance process: if the infraction is ultimately reviewed and affirmed, this does not provide prison officials with a window to retaliate against a prisoner just because his challenge was unsuccessful. Defendant's position would require prisoners to be certain that they are ultimately correct about their underlying concern before filing it for review. Under that rule, any grievance that does not prevail would retroactively lose constitutional protection, effectively granting officials license to

29

punish prisoners for raising concerns that turn out to be unfounded. The First Amendment does not tolerate such a regime.

That a complaint would not survive in federal court or is not actually meritorious does not make it an illegitimate grievance. It makes it exactly the kind of dispute the grievance process was designed to resolve. *See Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (the grievance process "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors"); *Booth v. Churner,* 532 U.S. 731, 736–37 (2001) (holding that exhaustion serves its purpose even when the grievance system cannot grant the specific relief the prisoner seeks, because the process of being heard and prompting administrative change can itself resolve complaints).

### 4. Defendant Incorrectly Invoked *Heck v. Humphrey*, Both Procedurally and Substantively.

Defendant incorrectly argues that Martell's grievance was not protected conduct because his underlying grievance was "barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)." OB at 23.[9] This Court should decline to reach this issue for two independent reasons. First, this Court lacks jurisdiction to address where a claim is

---

[9] Defendants ask this Court to extend the *Heck* bar specifically to Martell's punitive damages claim—an argument they did not raise below and that the district court never reached. OB at 23.

30

*Heck*-barred on an interlocutory appeal reviewing qualified immunity. As the Ninth Circuit held in *Cunningham*, the *Heck* issue is effectively reviewable after final judgment, making it inappropriate for interlocutory review under the collateral order doctrine. 229 F.3d at 1284. Therefore, procedurally, it is improper for this Court to decide this issue at this stage.[10]

Second, even considering the argument, *Heck* does not apply. Under *Heck*, a 42 U.S.C. § 1983 claim is barred only when a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. Where success on a § 1983 claim carries no such implication, the action may proceed. *See Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005); *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004). As this Court has recognized, "an action is barred by *Heck* only when the plaintiff's criminal conviction is fundamentally inconsistent with the

---

[10] Defendant has not argued that there is pendant appellate jurisdiction to review the *Heck* issue, nor could he. Pendant jurisdiction is interpreted very narrowly, only allowing jurisdiction over issues that are "inextricably intertwined." *Cunningham*, 229 F.3d at 1284. Because this cannot be established if the court "must apply different legal standards to each issue," *id.* at 1285, there is no pendant jurisdiction for Martell's First Amendment retaliation claim which has no bearing on whether his sentence or conviction is invalid. *See id.* ("The *Heck* issue is not 'inextricably intertwined' with the qualified immunity issues properly before us on interlocutory appeal, nor is it necessary to decide the issue to ensure meaningful review of the defendants' qualified immunity claims.")

unlawful behavior for which section 1983 damages are sought." *Martell v. Cole*, 115 F.4th 1233, 1236 (9th Cir. 2024) (quotations omitted).

Here, Martell's First Amendment retaliation claim does not challenge the validity of his conviction, the duration of his sentence, or the outcome of any disciplinary hearing.[11] The district court carefully assessed Defendant Houck's arguments that Martell's claims were *Heck*-barred, and held it applied to Martell's claims seeking compensatory damages for the extra time he spent in prison, but correctly held the punitive damages for the First Amendment claim were distinct and thus not barred by *Heck*. ER-013-15. This is because punitive damages in a First Amendment retaliation claim hinge not whether Martell's sentence was appropriate,

---

[11] Martell initially brought both First Amendment retaliation claims and Eighth Amendment claims for cruel and unusual punishment for additional time served in prison. ER-185-88. Though Martell's initial complaint combines both First and Eighth Amendment claims in each enumerated claim on his complaint, his Eighth Amendment claim for prolonged incarceration is analytically separate from his First Amendment claim, especially considering the Court's liberal construction of *pro se* pleadings. ER-185-88. Indeed, this is exactly how the district court treated it, when only the Eighth Amendment claim was dismissed at the screening stage, but the First Amendment claim was allowed to proceed. ER-198. His request for compensatory damages for additional time served is appropriately analyzed as related to Eighth Amendment claim, not his First Amendment claim. Though the district court analyzed this request for relief to thoroughly address Defendant's *Heck* bar argument, ER-013-15, his potential punitive damages under the First Amendment are distinct.

32

but on whether the defendant's retaliatory conduct involved "reckless or callous indifference to the federally protected rights of others." ER-015.

Accordingly, an award of punitive damages for retaliation under the First Amendment rights would have no bearing on his good-time credit calculation or any other aspect of his sentence. Whether Martell's sentence was valid or invalid, Houck's retaliatory conduct against Martell nonetheless violated the Constitution, and a jury could determine that punitive damages is appropriate, considering its purpose of deterring illegal and reprehensible conduct like Houck's.

That distinguishes this case from the authorities Defendant cites—*Edwards v. Balisok*, 520 U.S. 641 (1997); *Smith v. Veterans Admin.*, 636 F.3d 1306 (10th Cir. 2011); *Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996); *Hawkins v. California*, 317 F. App'x 694 (9th Cir. 2009)—all of which centered on the plaintiffs' direct challenges to the validity of an underlying conviction, sentence, or disciplinary finding under the Eighth or Fourteenth Amendments. Martell's First Amendment retaliation claim does no such thing. Therefore, *Heck* does not bar his claim.

**B. Martell Established a Genuine Issue of Material Fact That Defendant Houck Committed Adverse Action When He Threatened Martell and Obstructed His Access to the Grievance Process.**

"Adverse action need not be its own constitutional violation." *Watison,* 668 F.3d at 1114. The "mere threat of harm"—even a vague, unfulfilled threat—is an

33

adverse action. *See Brodheim*, 584 F.3d at 1270. If the defendant's threatening conduct implies that some form of punishment or regulatory action could result, then adverse action is established. *Id.*

Each of Houck's actions alone are sufficient to constitute an adverse action, and their cumulative impact only strengthens that conclusion. There is no question that Houck's threat that "[Martell] would not be going home if [he] had anything to do with it" was an adverse action. ER-185. As the district court correctly held, in addition to the threat, Houck withheld Martell's grievance, "den[ying] the opportunity for his grievance to even be reviewed or considered"—an adverse action on its own. ER-009; *see Howell v. Lindquist,* No. 2:19-CV-0612-DMC-P, 2019 WL 2491182 (E.D. Cal. June 14, 2019) (holding that the prison official committed an adverse action when he interfered with an incarcerated person's use of the grievance process by refusing to provide an appeal form).

Defendant Houck attempts to erase the threat at issue here, wrongly claiming that "Martell does not assert that Caseworker Houck took any additional punitive action or threat of punitive action." OB at 20. This is despite Martell's verified complaint, evidence at summary judgment, and the district court's order describing Houck's threat. ER-005; ER-143-45; ER-185. Rather than engage with this evidence, Defendant Houck constructs his argument as if the threat did not exist. In

34

effect, Defendant Houck asks this Court to construe all facts in his favor, contrary to the governing standard of review at summary judgment. *See Orn*, 949 F.3d at 1171. Furthermore, whether Defendant made the threatening statement is a factual dispute that cannot be resolved on appeal. *See* Fed. R. Civ. P. 56; *Perrtu v. Richards,* 605 U.S. 460, 470 (2025) (noting that it is "well established that when a factual dispute is intertwined with the merits of a claim . . . that dispute should go to a jury.").

This Court's decision in *Brodheim* is conclusive to the inquiry here. In *Brodheim*, the defendant wrote a message on the plaintiff's grievance that said, "I'd also like to warn you to be careful what you write [and] request on this form." *Brodheim*, 584 F.3d at 1266. This Circuit held that this was an adverse action because "a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Id.* at 1270. Those implications come to a head in the prison context, as "there [are] a number of things" that a corrections officer can do if the prisoner "fail[s] to comply with his warning that would have had a negative effect." *Id.*

Houck's statement here is far more explicit than in *Brodheim*. Rather than simply providing a general warning to Martell, Houck told Martell that he would not be "going home" if "[he] had anything to do with it," specifically threatening to prolong his incarceration, or worse— threaten his life—if he continued to pursue his

35

grievance. ER-185. This is especially concerning given Houck's power and control over some of the most important aspects in the prison including parole applications, jobs, programming, and, of course, physical oversight over prisoners. ER-148. Because "the power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat," Martell's allegations of Houck's threat properly raises "a genuine issue of material fact . . . as to whether. . . the statement intimated that some form of punishment or adverse regulatory action would follow a failure to comply." *Brodheim,* 584 F.3d at 1271; *see also Hernandez v. Ogbuehi*, No. 23-3306, 2025 WL 1276498 at *1 (9th Cir. May 2, 2025) (holding that summary judgment was improper where the defendant told the plaintiff "to withdraw [your] grievance to avoid any trouble" and that life would get "harder" if he continued with the grievance).

This Court has repeatedly held that adverse action is established when prison officials lodge threats they are poised to fulfill. *See e.g., Shepard,* 840 F.3d at 689 (holding that a correctional officer's statement that "'I'm go [sic] send you to ad/seg' is enough" to establish adverse action); *Gomez v. Vernon,* 255 F.3d 1118, 1127–28 (9th Cir. 2001) (determining that the district court did not err in finding that defendant "retaliated . . . in violation of [the prisoner's] First Amendment rights" when a prison official made "threats of transfer because of his complaints");

36

*Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (concluding that defendant calling the prisoner a "'snitch' in the presence of other inmates" was sufficient adverse action for a retaliation claim); *Klein v. Williams*, 714 F. App'x 631, 636 (9th Cir. 2018) (stating that an "allegation that [defendant] threatened [the prisoner's] employment as a result of his filing a grievance is enough to satisfy the 'adverse action' element"); *Jimenez v. Cox*, 473 F. App'x 520, 521 (9th Cir. 2011) (finding that a prison official's remark that the prisoner would remain incarcerated for a long time was a "threatening statement" sufficient to raise triable issue as to adverse action). Given Houck's position and authority, there is no question that his threat served as an adverse action.

Defendant Houck stresses that "Martell merely alleged that Caseworker Houck refused to properly process his grievance, which as a matter of law is not an adverse action." OB at 20. That argument is misplaced. First, as discussed above, Martell alleges that Houck made serious threats against him if he continued to file grievances. ER-185. Second, Martell alleges that Houck took adverse action against him by withholding his grievance from review, not just that Houck performed a routine screening of it. *Id.*

Beyond the threat, Houck repeatedly obstructed Martell's access to the grievance process. In particular, he refused to return Martell's first rejected

grievance for nearly two months, in violation of prison policy. ER-114; ER-185. Once Martell received it, he made prompt corrections and attempted to resubmit it, but Defendant Houck intentionally withheld Martell's prison grievance and never forwarded the grievance for review, depriving Martell of any opportunity to have the grievance heard by the officials empowered to address it. ER-185-86. Houck's refusal to submit his grievance for review led the district court to correctly conclude that there was "genuine dispute of material fact [regarding adverse action]; namely, whether he refused to process Plaintiff's grievance." ER-009.

Defendants improperly rely on cases that hold that a refusal to accept an incorrect grievance, or screening of a prisoner's grievance fails to constitute adverse action. OB at 19-20. Each of Defendant's cited cases is either mischaracterized or distinguishable. *See Richey v. Aiyeku,* 790 F. App'x 115 (9th Cir. 2020) (affirming the denial of qualified immunity based on the district court's finding that the prisoner tried to resubmit uncorrected grievances that retained derogatory language, *Richey v. Aiyeku*, No. 4:18-CV-5095-RMP, 2018 WL 11466254 (E.D. Wash. July 31, 2018)); *Richey,* 733 F. App'x 881 (holding that an officer's unilateral decision to reject a grievance for improper language violated the First Amendment, while concluding that merely refusing to accept an uncorrected grievances alone did not violate clearly established law at the time); *Iwanicki v. Pa Dep't of Corr.,* 582 F.

38

App'x 75 (3d Cir. 2014) (concluding that adverse action was not established where the prison official's conduct was the ordinary course of punishment for the prisoner's violation of a security rule and was not based on the content of his speech).

The district court properly recognized this line of cases and distinguished from them here, because unlike cases involving routine rejections, Martell "was denied the opportunity for his grievance to even be reviewed or considered." ER-009. Courts have repeatedly held that obstructing a prisoner's access to the grievance process can be considered adverse action. *See Rhodes,* 408 F.3d at 564 (deciding that prison officials "withhold[ing] filing of the group appeal [grievance]—thus evading [their] legal duty [to] promptly . . . respond to the grievance," in part, established adverse action); *Villery v. Jones*, No. 1:15-cv-01360-KES-HBK, 2025 WL 2908717, at *2–3 (E.D. Cal. Oct. 14, 2025) (holding that an officer's statement that a grievance was "not going anywhere" combined with the alleged withholding or destruction of the grievance, was sufficient to establish adverse action); *Howell*, 2019 WL 2491182, at *3 (holding that a prison official's refusal to provide a prisoner with an appeal form blocked the prisoner from accessing the grievance process and was sufficient to establish adverse action); *McDowell v. Rivera*, No. 1:13-CV-01797-MJS, 2013 WL 6909445, at *8 (E.D. Cal. Dec. 31, 2013) (finding that when "defendants allegedly destroyed [p]laintiff's grievances" it was sufficient to satisfy

39

adverse action). Therefore, the cumulative impact of Houck's retaliatory actions is more than sufficient to create a genuine dispute of material fact regarding whether he committed an adverse action.

### C. Martell Raised a Genuine Dispute About Whether Defendant Acted with Retaliatory Motive.

A prisoner satisfies the causation prong by alleging a "chronology of events from which retaliation can be inferred." *Watison*, 668 F.3d at 1114 (9th Cir. 2012); *see also Tomel v. Hawaii*, 570 F. App'x 717, 719 (9th. Cir. 2014). This Court examines knowledge, timing, and surrounding circumstances for evidence of retaliatory motive. *See Pratt v. Rowland*, 65 F.3d 802, 807–08 (9th Cir. 1995). Close timing and contextual evidence can support a finding of causation. *See Garcia v. Sleeley*, 2019 WL 2234789 (S.D. Cal May 22, 2019), *aff'd sub nom. Garcia v. Seeley,* 854 F. App'x 882 (9th Cir. 2021) (observing that a three-day interval between protected conduct and adverse actions supports an inference of retaliatory motive).

Martell clearly alleges fact-specific reasons for Houck's retaliation. Martell asserts that he engaged in altercations with Houck and that Houck's threat directly referred to the issue he was grieving. ER-185. This connection between the threat and the issue he was grieving creates a genuine dispute of material fact that Houck

40

had retaliatory motive. *See Watison*, 668 F.3d at 1116; *Bruce*, 351 F.3d at 1289 (considering the defendant's threatening statements as evidence to establish causation). Therefore, the district court correctly held "that this [threat] by Defendant Houck arguably serves as direct evidence of his retaliatory motive against Plaintiff for filing a grievance." ER-010.

Further, Martell alleges that Houck threatened him shortly after submitting his grievance. *Id.* The timing of Houck's retaliatory conduct only further establishes causation. *See McCollum v. Cal. Dep't of Corr. and Rehab.,* 647 F.3d 870, 882 (9th Cir. 2011) (noting that closeness in time between the protected speech and the alleged retaliatory conduct is one form of circumstantial evidence of motive); *Bruce*, 351 F.3d at 1288 (same).

Defendant Houck argues that Martell "merely speculates" a causation link, arguing Martell did not meet his burden because Houck stated he "had nothing whatsoever against Martell." OB 21.[12] Yet again, Defendant Houck urges this Court

---

[12] Defendant Houck mentions in passing that Martell does not present evidence "admissible at trial" to establish causation, without actually offering any arguments about inadmissibility. OB at 14. First, to the extent he is raising an argument of inadmissibility related specifically to causation, it is waived as it was not raised below for the district court to appropriately consider. *See* ER-004-15; ER-077. Second, it is well settled that verified complaints are sufficient to defeat summary judgment, because they are treated as the functional equivalent of an affidavit. *See McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987). At trial, plaintiffs can

to disregard the substantial factual disputes presented by Martell concerning their previous altercations and evidence of retaliatory motive, and inappropriately construe those disputed facts in his favor, contravening the governing standard of review. *See Orn*, 949 F.3d at 1171.

Houck also inappropriately relies on this Circuit's opinion in *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In *Wood v. Yordy*, the plaintiff failed to establish causation because there were no allegations about the defendant's specific conduct—the plaintiff only pointed to "isolated fragments of statements by prison officials, as overheard by other inmates, expressing dislike for [the plaintiff]." *Id.* at 904. Martell's allegations stand in stark contrast. Martell identified both Houck's conduct and motive with specificity, including a timeline of repeated instances where Houck interfered with Martell's grievances, specific threats that Defendant made directly to Martell, and a close temporal proximity of these events. ER-185.

---

introduce evidence to support the verified complaint through direct testimony and can make arguments about applicable hearsay exceptions, per usual course. *See e.g. Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1089 (S.D. Cal. 2023) (holding the plaintiff "could present the evidence in the sworn First Amended Complaint through his direct testimony at trial.")

42

### D. Defendant's Threat and Deliberate Obstruction of the Grievance Process Would Deter a Person of Ordinary Firmness from Engaging in Protected Speech.

The Ninth Circuit has recognized that the chilling effect element substantially overlaps with the adverse action inquiry. *Rhodes*, 408 F.3d at 567 n.11. This Court has explained that harm exceeding a minimal level will almost always produce a chilling effect, such that the distinction between alleging harm and alleging a chilling effect may be "no more than a nicety." *Id.* Consistent with this reasoning, courts have recognized that allegations of more-than-minimal harm suffice to establish the chilling effect element. *Watison*, 668 F.3d at 1114. A retaliation claim may also rest on an injury "no more tangible than a chilling effect on First Amendment rights," rendering the chilling effect and adverse action inquiries functionally interchangeable. *Brodheim*, 584 F.3d at 1269–70.

When evaluating the chilling effect element of a First Amendment retaliation claim, courts ask whether the defendant's conduct would chill a person of ordinary firmness from future First Amendment activities. *Rhodes,* 408 F.3d at 568–69. This Circuit has made clear that the chilling effect inquiry does not require extreme or egregious retaliation; rather, nontrivial interference with protected activity is sufficient. *Id.* at 570 n.11. To ensure that particularly resolute plaintiffs are not barred from bringing a claim, this standard is objective and does not require a plaintiff to

43

have been individually chilled. *See id*. at 569 (explaining that requiring proof of actual deterrence would be unfair in the prison context because it would make it effectively impossible to both exhaust administrative remedies and show that protected speech was suppressed); *see also Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Defendant Houck mischaracterizes the conduct at issue by contending that "no offender would be silenced based on refusal to process a grievance alone when the offender suffered no punitive action or threat of punitive action based on refusal." OB at 22. This case does not involve neutral administrative oversight or an isolated refusal to process paperwork. Defendant Houck's conduct was calculated and retaliatory: he deliberately blocked Martell's access to the grievance process and threatened Martell—conduct that would deter a reasonable person from continuing to exercise those rights. ER-185-86.

The threat alone is capable of deterring protected activity. Defendant Houck's statement that Martell would not be "going home" if Houck "had anything to do with it," ER-185, is not an offhand remark; it is a warning that continued use of the grievance process could carry serious consequences. A person of ordinary firmness would naturally hesitate—or cease altogether—to file grievances under such circumstances. *See Brodheim*, 584 F.3d at 1270 (explaining that the mere threat of

44

harm can have a chilling effect even if not carried out because of the fear of consequences they create); *Gomez*, 255 F.3d at 1127 (affirming that threats of transfer in retaliation for complaints violated the First Amendment even though the threats were never carried out, because threats alone can chill protected conduct).

This conclusion is reinforced by Houck's authority to carry out the threatened consequences. Defendant Houck was responsible for collecting and delivering grievances, acted as Martell's point of contact for parole-related matters, and facilitated access to programs affecting sentence reduction. ER-148. Given the scope of Defendant Houck's authority, a reasonable person in Martell's position would have understood that Houck could meaningfully influence when he could be released. *See Brodheim*, 584 F.3d at 1270.

That chilling effect is further amplified by Defendant's obstruction of the grievance process, which created an immediate and tangible barrier to a core mechanism for exercising First Amendment rights in the prison context. The district court correctly held that the chilling effect element was satisfied because Martell "successfully raised an issue of material fact as to whether a prison official's act in preventing a prisoner from filing a grievance would have chilled the prisoner's exercise of that right in the future." ER-009. The district court recognized the seriousness of Defendant's interference with Martell's grievances, concluding that

45

it went beyond the mere denial of a grievance because it prevented Martell's claim from ever reaching review. *Id.*

Defendant attempts to frame his actions as a mere "refusal to process a grievance alone," OB at 22, and cites to cases that are materially distinct from the case here because they involved only routine denials of uncorrected grievances or rejections based on procedural defects. *See Richey*, 733 F. App'x at 884 (addressing a refusal to process a grievance after the prisoner declined to rewrite it to remove offensive language); *Gonzalez v. Bendt*, 971 F.3d 742, 745–46 (8th Cir. 2020) (involving an isolated denial and delay of grievance forms where the plaintiff still received decisions on the merits of his grievances); *Iwanicki*, 582 F. App'x at 81 (involving a denial of a grievance, where the defendant rejected it because the plaintiff failed to use the proper grievance appeal procedure).[13] Here, by contrast,

---

[13] Defendant also relies on the unpublished decision, *Lyons v. Barth*, 637 F. App'x 278, 281–82 (9th Cir. 2015), for the proposition that prisoners may be required to tolerate more than non-prisoners before conduct is considered sufficiently chilling. OB at 22. Their reliance is misplaced. *Lyons* involved only a routine escort of a prisoner from his cell *in accordance with the prison's policy*. *Id.* Here, by contrast, Defendant *violated prison policy* by impeding Martell's ability to pursue prison grievances, a procedural mechanism essential to protected speech. ER-185-86. NDOC policy itself recognizes the role of grievances in enabling prisoners to pursue claims and seek redress. ER-105. Courts have emphasized that, although prisoners may be expected to endure more than ordinary citizens, that principle does not extend to actions that hinder their ability to pursue legal claims or access grievance processes. *See, e.g., Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002).

46

Defendant's conduct prevented Martell's grievance from reaching the officials empowered to review the claim or provide a remedy.

Martell's own response further illustrates the objective reasonableness of that deterrent effect. After learning that his corrected grievance had not been filed, he declined to resubmit it through Houck out of concern that the same interference would recur. ER-186. Although actual deterrence is not required, courts recognize that a plaintiff's reaction may be considered evidence of how a reasonable person would respond under similar circumstances. *See Harbridge v. Reed*, 2024 WL 4719083, at *3 (9th Cir. Nov. 8, 2024) (holding that a reasonable jury could find that the plaintiff's subjective chilling in response to a threatened transfer was objectively reasonable); *Crittendon v. Cooper*, No. 22-55861, 2023 WL 3728380, at *4 (D. Nev. May 1, 2023) (finding that the plaintiff's expressed fear of retaliation showed that defendant's threats could deter a reasonable prisoner, even though the plaintiff continued engaging in protected activity). Therefore, Martell's subjective response supports finding a genuine issue of material fact as to whether Houck's conduct chilled his First Amendment rights. *See Bell*, 308 F.3d at 605 (treating the plaintiff's fear as evidence that defendants' conduct had an intimidating effect capable of deterring a person of ordinary firmness).

47

II.     **Prisoners Have a Clearly Established Right to be Free From Retaliation for Filing of Grievances.**

When evaluating whether a right is clearly established for qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary that a previous decision directly mirrors the factual circumstances of the instant case, "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation marks omitted).

In this Circuit, the law has been clear for decades: "Prisoners have a First Amendment right to file prison grievances." *Brodheim*, 584 F.3d at 1269. In prisoner First Amendment claims, "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit." *Pratt*, 65 F.3d at 806; *see also Watison*, 668 F.3d at 1114; *Rhodes*, 408 F.3d at 567. As the district court recognized, Martell can easily demonstrate Houck "was on notice that Plaintiff was entitled to have his grievance processed by the prison administration, and that he had a right to be free from retaliation for doing so." ER-013.

*Brodheim* squarely governs here. In *Brodheim*, a prison official, entrusted with processing the plaintiff's grievance, denied it and warned the plaintiff "to be careful" when submitting future grievances. 584 F.3d at 1265–66. Those basic facts

48

were found by this Court to establish a First Amendment retaliation claim, and they support the same finding in this case. *Id*. at 1274. Just like in *Brodheim*, it does not matter here whether the threat was abstract, nor whether the plaintiff was subjectively chilled. *Id*. at 1270–71. Nor does it matter the precise form or language of the grievance in question, as it "was part of the grievance process, and was thus protected activity." *Id*. at 1271 n.4. At the time of Houck's violative conduct, then, prison officials were on clear notice that retaliating against Martell for filing a grievance would violate the First Amendment as a matter of clearly established law.

Rather than address this basic precedent, Houck misidentifies the constitutional right at issue, misapplies the qualified immunity standard, and fails to meaningfully engage with the district court's order. The district court's denial of qualified immunity should be affirmed, and a jury should be empowered to evaluate Martell's claim.

### A. The District Court Correctly Articulated the Constitutional Right at Issue.

The Supreme Court has provided guidance for the process of defining the right at issue in a qualified immunity analysis, to ensure the resulting definition enables plaintiffs to bring viable claims but provides sufficient notice to officials of unlawful conduct. *See Anderson*, 483 U.S. at 639. In line with that principle, the district court properly held the law clearly established Martell was "entitled to have his grievance

49

processed by the prison administration, and that he had a right to be free from retaliation for doing so." ER-13.

Houck proposes an alternative construction of the right in his Opening Brief, stating that "[n]o court has held that a prison official retaliates against an inmate in violation of the First Amendment when the offender filed a frivolous grievance, and the prison official took no punitive action or threat of punitive action but merely refused to process a grievance." OB at 24. That proposed construction fails under basic legal scrutiny due to an improper reliance on disputed facts.

In evaluating qualified immunity at the summary judgment stage, courts view the evidence "in the light most favorable to the opposing party," a rule that applies with equal force to an analysis of the clearly established prong. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Supreme Court has cautioned that because defining the right at issue depends on the specific context of the case, courts "must take care not to define a case's context in a manner that imports genuinely disputed factual propositions." *Id.* (quotations omitted).

It could not be more apparent that Houck's proposed construction includes disputed facts. His formulation of the right at issue is premised on a First Amendment violation where "the prison official took no punitive action or threat of punitive action." OB at 24. However, the district court's summary judgment order

50

specifically included in its "Disputed Facts" whether Houck threatened that Martell "would not be going home if [Houck] had anything to do with it." ER-005.

Houck would also have this Court include the allegedly "frivolous" nature of Martell's grievance in its construction of the right at issue. As discussed *supra* Section I.A., Martell's grievance was not frivolous. Again, however, it is obvious that the specific content and even basic existence of Martell's corrected grievance form part of the essential factual dispute in this case, and therefore would be improper to include in the construction of the right at issue. *See* ER-068 (wherein Houck contests Martell's allegation that he submitted a corrected grievance); *see also* ER-005 (wherein the district court includes the circumstances of Martell's corrected grievance in its "Disputed Facts" section).

As this Court recently affirmed, the "clearly established law analysis must proceed based on [a] Plaintiff's allegations rather than Defendants' framing of the evidence." *Gonzalez v. City of Phoenix*, 163 F.4th 1289, 1304 (9th Cir. 2026). Houck's attempt to insert disputed factual conclusions into the clearly established analysis should be rejected as a gross distortion of the qualified immunity standard.

In addition, Houck's reliance on and description of *Cunningham* is deeply misleading. OB at 23. The case does not hold that a court must conduct an "'individualized analysis . . . examining each of the . . . elements of the alleged cause

51

of action," such that a plaintiff must point to clearly established law for each individual element of their claim. *Id*. (quoting *Cunningham*, 229 F.3d at 1289). The "elements" described in that case were an unusually broad slate of defendants and a claim arising from an assortment of alleged illegal acts, such as the failure to arrest, perjury, and the fabrication of evidence. *Cunningham*, 229 F.3d at 1279–80. This Court elected to "conduct the individualized analysis that the district court failed to perform, examining each of the [necessary] elements of the alleged 'common course' of unlawful conduct." *Id.* at 1289. That full context, which Houck's specious use of ellipses elides, undercuts his attempt to impose novel and unwarranted requirements on the qualified immunity standard.

Houck also confuses the two discrete prongs of the qualified immunity analysis. References in the Opening Brief to Martell's alleged failure to meet the individual elements of his claim reiterate arguments about whether a constitutional violation was established, which are ultimately irrelevant to the section's purpose of addressing clearly established law. OB at 24; *see Stringer v. Cnty. of Bucks*, 141 F.4th 76, 88 n.9 (3d Cir. 2025) (rejecting defendant's attempt to conflate prongs one and two of the qualified immunity test). Houck's construction of the right, improperly reliant on disputed facts and a distorted understanding of the qualified immunity standard, must be rejected.

52

> **B.** **The Specifics of Houck's Retaliatory Conduct Violated Clearly Established Law.**

This Circuit has repeatedly held that threatening prisoners and obstructing their access to the grievance process violates clearly established law. Defendant Houck offers strained arguments and inapplicable case law in an attempt to avoid liability. Each argument fails under a proper evaluation of relevant precedent.

> **1. Houck Violated Clearly Established Law by Threatening Martell and Obstructing His Grievance.**

Defendant Houck retaliated against Martell by refusing to submit his grievances and threatening that Martell "would not be going anywhere if he had anything to do with it." ER-185. That specific form of retaliation violates clearly established law.

First, this Court has been clear that the rejection of a grievance alongside a verbal threat violates clearly established rights. Again, this Court established nearly two decades ago in *Brodheim* that even an abstract threat, issued alongside the rejection of a prisoner's grievance, qualifies as a violation of the First Amendment. 584 F.3d at 1270. As the court noted, a plaintiff "need not establish that [defendant's] statement contained an explicit, specific threat." *Id.* Houck's statement to Martell is at least as threatening, if not more so, as that of the defendant in *Brodheim*, who merely warned the plaintiff in that case "to be careful." *Id.* at 1266.

53

This Court has regularly affirmed in similar circumstances that a prison official issuing a threat in response to protected conduct violates a prisoner's First Amendment rights. *See, e.g.*, *Shepard*, 840 F.3d at 693–94 (denying summary judgment and holding that qualified immunity was improper when the defendant officer threated to place the plaintiff in administrative segregation for submitting a complaint about another officer); *Gomez*, 255 F.3d at 1127 (holding that "as a matter of law" that the defendant "retaliated against [the prisoner] in violation of his First Amendment rights" when a prison official made "threats of transfer because of his complaints"); *Klein*, 714 F. App'x at 636 (denying qualified immunity because "[a] reasonable official would have understood that threatening to fire an individual in retaliation for that individual's exercise of his right to file a grievance would violate clearly established law.")

Second, when Defendant Houck refused Martell's corrected grievance, his actions extended beyond a routine rejection. Defendant Houck substantively interfered with Martell's corrected grievance, ensuring it would never be processed or properly evaluated. ER-005. Courts have recognized that similar conduct—destroying or obstructing a grievance before it can be evaluated—can support a clearly established violation of the First Amendment. *See, e.g.*, *Rhodes,* 408 F.3d at 564 (holding that a prison official "withhold[ing] filing of the group appeal

54

[grievance]" and "thus evading . . . duty . . . to respond to the grievance," in part, established a First Amendment retaliation claim).

Houck attempts to assert that "refusals to accept or process a grievance is [sic] not an adverse action, under clearly established law," OB at 24, but that argument fails to address the specifics of Martell's claims. Houck's actions in intentionally obstructing the filing of a corrected grievance differ materially from the cited cases, which arose from the refusal to process uncorrected grievances with derogatory language. *See Aiyeku*, 790 F. App'x at 115; *Dahne*, 733 F. App'x at 881. A closer analysis of both cases shows they do little to bolster Houck's claim of qualified immunity, and instead demonstrate his actions violated clearly established law.

*Dahne* involved an initial rejection of a grievance for including disrespectful language about the guard's weight. *Id.* at 882. The prison official returned the grievance to the prisoner and asked him to remove the offending language, but the prisoner chose to re-submit the same, uncorrected grievance. *Id*. After the official refused to process the uncorrected grievance, the prisoner filed suit. *Id.* This Court held that the defendant should be granted qualified immunity, as "merely requesting that a prisoner rewrite a grievance is not a First Amendment violation." *Id.* at 883. As this Court noted, the law requires action "over and above" a simple refusal to process. *Id.* at 884.

55

*Aiyeku* similarly focused on a First Amendment retaliation claim arising from an official's refusal to process a grievance. 790 F. App'x at 116. Again, however, the official's alleged violation was the refusal to process uncorrected grievances after requesting derogatory language be removed. *Richey v. Aiyeku*, No. 4:16-CV-5047-RMP, 2021 BL 99974 at *3 (E.D. Wash. Mar. 19, 2021). This Court again cited the need for some "additional punitive action or threat of punitive action" for an officer's conduct to violate clearly established law. *Aiyeku*, 790 F. App'x at 116.

Martell does not allege that Houck refused to file an unchanged grievance. Instead, the violation occurred when Houck obstructed Martell's *corrected* grievance, while verbally threatening that Martell "would not be going anywhere if he had anything to do with it." ER-185. Houck's own brief acknowledges these elements of Martell's claim. OB at 6. Rather than support a claim of qualified immunity, then, *Dahne* and *Aiyeku* undercut it: Houck's retaliatory actions went "over and above" the mere refusal to process an uncorrected grievance, in violation of clearly established law. *Dahne*, 733 F. App'x at 884.

### 2. Defendant's Arguments Regarding the Merits of Martell's Grievance are Irrelevant to his Claim for Qualified Immunity.

Defendant Houck also argues that no clearly established law under the First Amendment protects against retaliation "when the offender filed a frivolous grievance." OB at 24. However, his argument rests on a misunderstanding of Ninth

Circuit law, and is furthermore at odds with the basic standards and purposes of qualified immunity.

As a threshold matter, the existence and contents of Martell's corrected grievance are substantially in dispute. It would be improper to evaluate Houck's claim of qualified immunity by assuming unproven facts at the summary judgment stage. *See supra* Section I.A; *Tolan,* 572 U.S. at 657. Still, Martell's claim succeeds even if the specifics of his grievance are assumed.

This Court has regularly used unqualified language when describing the protections for prisoner grievances under the First Amendment. *See, e.g., Brodheim*, 584 F.3d at 1269 ("It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances"); *Bruce*, 351 F.3d at 1288 (noting that a "chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim."). In *Brodheim*, the defendants attempted to escape liability by alleging the retaliation was in response to the prisoner's "interview request form," rather than a grievance. *Brodheim*, 584 F.3d at 1271 n.4. This Court rejected that myopic focus on the specifics of the prisoner's speech in favor of an appropriately broad rule: his speech "was part of the grievance process, and was thus protected activity." *Id.* Per *Brodheim*, then, prison officials

57

violate clearly established law when they retaliate against a prisoner's use of the grievance process, without regard to the specifics of the use itself.

To support his contention that clearly established law protects only "nonfrivolous" grievances, Defendant Houck points to just one unpublished case from this Court: *Williams*, 2025 WL 1419903 (9th Cir. 2025). That single case, however, carries no legal weight in this matter, as qualified immunity necessarily rests on whether the law "was clearly established *at the time an action occurred*." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). *Williams* was decided in 2025, and Houck's retaliatory conduct took place in 2021 and 2022. As this Court has recently affirmed, "only cases that predate the incident are relevant to the 'clearly established' inquiry." *Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022); *see also Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004). Houck is simply not entitled to rely on *Williams* in a claim of qualified immunity for conduct occurring more than three years prior to the decision.[14]

If Houck attempted to predicate his claim upon the cases cited in *Williams*, he would similarly find little support for his arguments. *Lewis v. Casey* never discusses the prison administrative grievance process, let alone related protections under the

---

[14] Even considering this argument, as discussed *supra* Section I.A.2., Martell's grievance was not frivolous, per the standard actually applied in *Williams*.

First Amendment, but instead focuses on the requirements for showing actual injury in an access-to-court claim. 518 U.S. at 349–50. Furthermore, the sole mention of frivolousness in *Jones v. Williams* is in a parenthetical describing the law of the Seventh Circuit. 791 F.3d at 1035. This Court declined to explicitly adopt a similar standard for itself in *Jones*, instead restating its broad rule that the "First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities." *Id.*

Houck is thus unable to point to any relevant precedent in effect at the time of his illegal conduct that imposes a requirement in this Circuit that grievances be nonfrivolous. In the absence of such precedent, this Court is left with the unqualified rule it has regularly articulated: "Prisoners have a First Amendment right to file prison grievances." *Brodheim*, 584 F.3d at 1269.

Ultimately, any later determinations about the merits of Martell's grievance are irrelevant to the question of whether Defendant violated clearly established law. To hold otherwise would contradict the precedent of this Court. The qualified immunity standard exists to protect officials from being held "liable for conduct that they did not (and could not) know was unlawful at the time they decided to act." *Rhodes*, 408 F.3d at 570. As Houck himself admitted to the district court, for all he knew Martell "had a legitimate reason for bringing the issue to [prison

administrator's] attention." ER-149. Allowing Houck to cite a later determination about the validity of Martell's claims would destroy the purposes of qualified immunity by allowing it to "turn *on the harm eventually caused* by an official's conduct." *Rhodes*, 408 F.3d at 570 (emphasis in original).

As this Court has noted, the "relevant inquiry is not whether, in hindsight, [the official] acted unreasonably, but instead whether his decision was reasonable in light of the information that he possessed at the time of implementation." *Rudebusch v. Hughes*, 313 F.3d 506, 519 (9th Cir. 2002). To allow Houck to cite information he did not know in support of a claim for qualified immunity "would make immunity hinge upon precisely the kind of post hoc judgment that the doctrine is designed to avoid." *Rhodes*, 408 F.3d at 570.

The fundamental question for the second prong of the qualified immunity analysis is whether Houck was on notice that Martell had a First Amendment right to file grievances, and a right to be free from retaliation from doing so. The district court correctly held that the law clearly established both rights, and its decision must be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's denial of qualified immunity.

Date: April 27, 2026

Respectfully Submitted,

*/s/ Amaris Montes*
Amaris Montes
Aaron Littman
UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 825-9562

*Attorneys for Appellant Plaintiff-Appellee,*
*LeAndre Martell*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit pursuant to Ninth Circuit Rule 32-1 because this brief contains 13,528 words, excluding the items exempted by Fed. R. App. P. 32(f).

I certify that this brief complies with the type size and typeface requirements pursuant to Fed. R. App. P. 32(a)(5) and (6), as it is proportionately spaced and uses 14-point font.

Date:  April 27, 2026

*/s/ Amaris Montes*
Amaris Montes
UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 825-9562

*Attorney for Appellant Plaintiff-Appellee,
LeAndre Martell*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered users will be served by the appellate electronic file system.

Date: April 27, 2026

/s/ Amaris Montes
Amaris Montes
UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 825-9562

*Attorney for Appellant Plaintiff-Appellee,*
*LeAndre Martell*